114 F.Supp.2d 871 (2000)
Jakov ANIC, Petitioner,
v.
Janet RENO, Attorney General, et al., Respondents.
No. 4:99CV1496 CDP.
United States District Court, E.D. Missouri, Eastern Division.
September 26, 2000.
*872 Dorothy J. Harper, St. Loius, MO, Timothy E. Wichmer, Brown and Wichmer, P.C., St. Louis, MO, for Petitioner.
Michael W. Reap, Jane Rund, Office of U.S. Atty., St. Louis, MO, Lyle D. Jentzer, U.S. Dept. Justice, Immigration Litigation Office, Washington, DC, for Respondents.

MEMORANDUM AND ORDER
PERRY, District Judge.
On September 24, 1999, Jakov Anic petitioned this Court for a writ of habeas corpus under 28 U.S.C. § 2241. Because I conclude that I lack subject matter jurisdiction over this matter, I will dismiss the petition.
Anic's petition raises constitutional and statutory challenges to the final order of removal requiring his deportation as an alien convicted of an aggravated felony under INA § 237(a)(2)(A)(iii), and as an alien convicted of a state controlled substance law under INA § 237(a)(2)(B)(i). He names as respondents Chester Moyer, the officer in charge of the St. Louis INS, and Janet Reno, Attorney General of the United States. Respondents argue that I lack jurisdiction in this case, and, alternatively, that Anic's petition fails to state a claim.
On September 24, 1999, I ordered respondents to show cause why Anic's petition should not be granted, and, with respondents' consent, restrained them from removing Anic from the Court's jurisdiction. Because I now conclude that I lack subject matter jurisdiction over this matter, I will dismiss Anic's petition and vacate the previous order restraining the government from removing Anic from the Court's jurisdiction.

I. Facts

Jakov Anic was born in 1969 in the former Yugoslavia. He entered this country in 1977 as a lawful permanent resident and has since lived continuously in the United States. In 1992, Anic pleaded guilty to burglary and was sentenced to two years incarceration. In 1997, Anic pleaded guilty to cocaine possession and received probation. Anic's burglary conviction is an "aggravated felony" as currently defined in INA § 101(a)(43)(F), 8 U.S.C. § 1101(a)(43)(F). Under the law existing at the time of Anic's 1992 guilty plea, Anic would have been eligible for discretionary relief from deportation under former INA § 212(c), 8 U.S.C. § 1182 (repealed). However, AEDPA § 440(d) later amended INA § 212(c) to eliminate eligibility for discretionary relief for aliens deportable by reason of having committed aggravated felonies. The successor statute of § 212(c), entitled "cancellation of removal," is codified in INA § 240A(a), 8 U.S.C. § 1229b(a). Relief under § 240A is also unavailable to aliens convicted of aggravated felonies.
On June 4, 1998, INS instituted removal proceedings against Anic under INA § 240. INS charged Anic as an alien convicted of an aggravated felony under INA § 237(a)(2)(A)(iii) and as an alien convicted of a state controlled substance law under INA § 237(a)(2)(B)(i). At his removal hearing, Anic conceded his removability *873 under both charges and requested to apply for withholding of removal under INA § 241(a)(3)(B). Anic later withdrew this application, however, and made no other claim for relief. The immigration judge ordered Anic's removal to Bosnia-Herzegovina, and Anic waived appeal. The order of removal became final at that time. See 8 C.F.R. § 3.39. On September 2, 1999, INS ordered Anic to report for removal on September 27, 1999. On September 24, Anic petitioned this Court for habeas corpus relief.

II. Discussion

Anic argues that §§ 440(d) and 240A, which exclude aliens who have committed aggravated felonies from eligibility for discretionary relief, do not apply to him as a matter of statutory construction. He also contends that denying him eligibility for discretionary relief violates his rights under the Fifth Amendment of the U.S. Constitution. The government argues that INA § 242, 8 U.S.C. § 1252, divests this Court of jurisdiction, and alternatively that, on the merits, Anic fails to state a claim.
The permanent rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, codified in § 242 of the INA, 8 U.S.C. § 1252, apply to this case because the government placed Anic in removal proceedings after April 1, 1997. In arguing that this Court lacks jurisdiction, the government relies on three permanent rule provisions. First, the government argues that INA § 242(b)(9), 8 U.S.C. § 1252(b)(9), divests this Court of jurisdiction to review a final order of removal in a habeas proceeding. Second, the government argues that this Court lacks jurisdiction because Anic failed to file a timely petition for review under 8 U.S.C. § 1252(b)(1). Finally, the government argues that Anic cannot challenge the order of deportation because he failed to exhaust his administrative remedies as required by 8 U.S.C. § 1252(d)(1). Because I conclude that INA § 242(b)(9) divests district courts of jurisdiction to review final removal orders in habeas proceedings, I find it unnecessary to address the parties' remaining arguments.

A. Recent History of Immigration Jurisdiction Laws

The Immigration and Nationality Act, 8 U.S.C. § 1101 et seq., governs the admission and removal of aliens to and from the United States. Before 1996, § 106 of the INA, previously codified as 8 U.S.C. § 1105a, governed judicial review of deportation and exclusion orders. In 1996, however, Congress made changes that significantly limited federal court jurisdiction to review immigration decisions. First, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996). Section 440 of the AEDPA repealed INA § 106(a)(10), which had expressly provided for habeas review under the INA.
Next, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104-208, 110 Stat. 3009 (1996). Section 306 of IIRIRA repealed the judicial-review scheme set out in INA § 106 in its entirety. See IIRIRA § 306, 110 Stat. at 3009-607 to 3009-612. IIRIRA, in turn, established two sets of rules to govern judicial review of removal proceedings: transitional and permanent. The transitional rules, found in the uncodified provisions of IIRIRA § 309(c)(4), 110 Stat. 3009-626, apply to removal proceedings commenced before April 1, 1997, in which a final order of deportation was entered on or after October 1, 1996. The new permanent rules, codified in § 242 of the INA, 8 U.S.C. § 1252, apply to removal proceedings instituted on or after April 1, 1997.

B. INA § 242(b)(9)

The government's primary argument is that INA § 242(b)(9) divests this Court of jurisdiction to review a final removal order in a habeas proceeding. Neither the Supreme Court nor the Eighth Circuit has addressed this issue. Two circuits have held that § 242(b)(9) eliminates habeas *874 jurisdiction. See Max-George v. Reno, 205 F.3d 194, 198 (5th Cir.2000); Richardson v. Reno, 180 F.3d 1311, 1314-15 (11th Cir.1999). Four circuits have held to the contrary. See Mahadeo v. Reno, 226 F.3d 3, 7-8 (1st Cir.2000); St. Cyr v. I.N.S., 229 F.3d 406, 409 (2d Cir.2000); Flores-Miramontes v. INS, 212 F.3d 1133, 1140 (9th Cir.2000); Liang v. INS, 206 F.3d 308, 323 (3d Cir.2000).
INA § 242(b)(9), entitled "Consolidation of Questions for Judicial Review," provides
Judicial Review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this subsection.
8 U.S.C. § 1252(b)(9). In addition, § 242(a)(1) provides that "[j]udicial review of a final order of removal ... is governed only by chapter 158 of Title 28, except as provided in subsection (b) of this section." 8 U.S.C. § 1252(a)(1). Therefore, an alien seeking judicial review of any legal or factual issue arising from a removal proceeding may avail himself only of the direct review procedures found in chapter 158 of Title 28, 28 U.S.C. §§ 2341-51, unless § 242 provides otherwise. In keeping with this interpretation, the Supreme Court in Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 471, 483, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999), characterized § 242(b)(9) as a "general jurisdictional limitation," id. at 482, 119 S.Ct. 936, and an "unmistakable `zipper' clause," id. at 483, 119 S.Ct. 936. By this language, the Court meant that 242(b)(9) "says `no judicial review in deportation cases unless this section provides judicial review.'" Id. at 482, 119 S.Ct. 936.
Neither chapter 158 of Title 28 nor § 242(b) provides for habeas review in this case.[1] With certain exceptions not relevant here, chapter 158 and § 242 allow an alien to obtain judicial review only by filing a petition for direct review in a federal court of appeals. See Max-George, 205 F.3d 194, 198 ("The clear language of IIRIRA's permanent rules force an alien to raise all potential issues regarding his deportation at one place and time: a petition for review filed in the court of appeals."). In sum, the general jurisdictional limitation of § 242(b)(9), coupled with the absence of a provision within § 242 providing for habeas review, divests this Court of habeas jurisdiction.

1. Shah v. Reno

In arguing that this Court retains jurisdiction to review his habeas petition notwithstanding § 242(b)(9), Anic relies primarily on Shah v. Reno, 184 F.3d 719 (8th Cir.1999). Petitioner's reliance on Shah, however, is misplaced. Although the Eighth Circuit concluded in Shah that the district court retained habeas jurisdiction to review the petitioner's final removal order, the court reached that decision only after finding § 242(b)(9) inapplicable to that case because the case was governed by the transitional rules. Shah, 184 F.3d at 722. The court specifically limited its holding to transitional cases: "As to whether the new [permanent rules] ... exclude all judicial review, including habeas corpus, in other cases, we express no view. Our opinion is limited to those who, like Mr. Shah, fall within IIRIRA's transition rules." Id. at 725. Therefore, Shah is not controlling here.

2. Decisions from Other Circuits

Several recent cases from other circuits, however, do support Anic's position. In holding that habeas jurisdiction survives § 242(b)(9), these courts advance two rationales. *875 First, these courts rely on the rule of Felker v. Turpin, 518 U.S. 651, 660-61, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996), that any repeal of habeas jurisdiction must be express. Because § 242(b)(9) does not explicitly reference § 2241 or mention habeas corpus, these courts conclude that § 242(b)(9) does not expressly repeal habeas jurisdiction. Secondly, these courts reason that habeas corpus is not "judicial review" under § 242. Under this construction, §§ 242(a)(1) and (b)(9), and possibly the remainder of § 242, have no effect on habeas cases.
Felker's presumption against implicit repeal of habeas jurisdiction does not require a finding that § 242(b)(9) preserves habeas review. Sections 242(a)(1) and (b)(9) divest courts of jurisdiction to review final orders of removal except as provided in § 242(b) and chapter 153 of Title 28. This amounts to an express preclusion of all review, including habeas review, to the extent that § 242(b) and chapter 153 make no provision for review. See Max-George, 205 F.3d 194, 198.
In Felker, the Court addressed the effect of the AEDPA "gatekeeping" mechanism on the Supreme Court's jurisdiction to review denials of leave to file second or successive habeas petitions. The gatekeeping statute requires a prospective applicant for a second round of habeas corpus review to first obtain leave to file a second petition from the court of appeals. See 28 U.S.C. § 2244(b)(3)(A). The statute substantially curtails review of the courts of appeals' gatekeeping determinations, providing that "[t]he grant or denial of an authorization by a court of appeals to file a second or successive [habeas] application shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari." 28 U.S.C. § 2244(b)(3)(E). Relying on the canon disfavoring repeal of jurisdictional statutes by implication, the Court held that the AEDPA's elimination of certiorari and appellate review did not implicitly strip the Court of jurisdiction to hear original habeas petitions under 28 U.S.C. § 2241. Felker, 518 U.S. 651, 660-61, 116 S.Ct. 2333, 135 L.Ed.2d 827.
Nothing in Felker precludes Congress from eliminating habeas review by way of a general jurisdictional limitation rather than by specifically referring to habeas. Felker stands for the proposition that, when Congress eliminates specified avenues of review, other avenues do not become foreclosed by implication. Not only did the Supreme Court's original habeas jurisdiction survive the preclusion of three specific avenues of review in 28 U.S.C. § 2244  appeal, certiorari, and rehearing  the concurring opinion in Felker suggested three additional surviving avenues for seeking Supreme Court review of gatekeeping determinations. Felker, 518 U.S. at 666, 116 S.Ct. 2333 (Souter, J., concurring). Therefore, the lesson of Felker seems to be that it would be almost impossible for Congress to effectively streamline review of deportation cases except through the type of general jurisdictional limitation found in § 242. Only by eliminating all judicial review other than the review provided by a specified statutory framework could Congress curtail efforts to invoke district courts' jurisdiction through a myriad of unforseen procedural avenues.
In addition to reasoning that § 242(b)(9) does not expressly repeal habeas jurisdiction as Felker requires, those courts which hold that habeas jurisdiction survives § 242(b)(9) reason that habeas corpus is not "judicial review" under § 242. See Mahadeo, 226 F.3d at 11; Flores-Miramontes, 212 F.3d 1133, 1140; Liang, 206 F.3d 308, 320. See also Sandoval v. Reno, 166 F.3d 225, 235 (3d Cir.1999) (interpreting the transitional rules). These circuits conclude that the terms "review" and "judicial review" in AEDPA and IIRIRA refer only to petitions for direct review under the Administrative Procedure Act. See Sandoval, 166 F.3d at 235. In support of this conclusion, these courts rely on the "sharp distinction" the Supreme Court purportedly drew between habeas corpus *876 and judicial review in Heikkila v. Barber, 345 U.S. 229, 73 S.Ct. 603, 97 L.Ed. 972 (1953).
In Heikkila, an alien who had been ordered deported sought judicial review of the order under the Administrative Procedure Act. Before the enactment of the APA, habeas corpus had been the only method by which an alien could challenge a deportation order. See id. at 230, 73 S.Ct. 603. The Court held that Heikkila could not avail himself of the APA's judicial review provisions, and that habeas corpus remained his sole avenue for attacking the deportation order. Id. at 235, 73 S.Ct. 603. The Court reasoned that the Immigration Act of 1917, which made administrative deportation decisions "final," fell within an APA provision exempting from APA review those cases in which "statutes preclude judicial review." Id. The Court in Heikkila thus held that the Immigration Act was a "statute preclud[ing] judicial review" even though the Act did not preclude habeas corpus proceedings.
The Heikkila Court did not hold that judicial review and habeas corpus are entirely distinct concepts. Rather, the Court rejected the position of several lower courts that "the finality of an administrative decision must be absolute before the [review preclusion exception] can apply." Id. at 235, 73 S.Ct. 603. In other words, the Court held that a statute need not preclude all judicial review to preclude APA judicial review. The Court reasoned that the APA authorizes broader judicial intervention than the writ of habeas corpus. See id. at 236, 73 S.Ct. 603 ("[I]t is the scope of inquiry on habeas corpus that differentiates use of the writ from judicial review as that term is used in the Administrative Procedure Act.").
The statutory language contains no indication that "judicial review" under §§ 242(b)(9) and (a)(1) does not include habeas corpus. The only evidence in § 242 as to the meaning of "judicial review" points in the opposite direction. Section 242(e)(2) provides that "[j]udicial review of any determination made under 1225(b)(1) of this title is available in habeas proceedings." More evidence that the term "judicial review" as used in the INA includes habeas corpus can be found in former INA § 106, 8 U.S.C. § 1105a. Prior to its repeal by AEDPA § 401(e), INA 106(a)(10) provided that "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings."
Moreover, if habeas is not "judicial review" under § 242(b)(9), that provision has no effect on habeas cases. Under that construction, § 242, a statute intended to expedite the removal process, would produce the opposite effect. Prior to 1996, habeas review of deportation orders was generally available only when the petitioner could not obtain direct review in the court of appeals. See Shah, 184 F.3d 719, 721 (citing Daneshvar v. Chauvin, 644 F.2d 1248, 1250 (8th Cir.1981)). Conversely, if § 242(b)(9) has no effect on habeas, any alien could presumably attack a removal order by filing a habeas petition in a district court, regardless of whether the alien had full access to direct review in the court of appeals. Under this construction, IIRIRA would have expanded, rather than curtailed, the avenues available for challenging removal orders.

B. Suspension Clause

Section 242(b)(9), as applied to Anic, does not violate the Suspension Clause even though INA § 242(a)(2)(C) limits Anic's ability to seek direct review in the court of appeals. The Suspension Clause provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I § 9, cl. 2. Congress may, however, eliminate habeas jurisdiction if the review remaining open is adequate "to test the legality of a person's detention." Swain v. Pressley, 430 U.S. 372, 381, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977). While the question is close, I conclude that INA § 242(a)(2)(C) leaves open *877 sufficient avenues of review to test the legality of Anic's detention.[2]
Section 242(a)(2)(C) provides that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense" covered in various provisions of the INA. 8 U.S.C. § 1252(a)(2)(C). The order of removal issued against Anic was based upon criminal convictions that fall within the INA provisions referenced by § 242(a)(2)(C). This section, however, does not preclude all review of the removal order. Section 242(a)(2)(C), although couched as a complete jurisdictional bar, permits substantial judicial review of the legality of an alien's removability. In determining whether § 242(a)(2)(C) applies, a court must consider whether a petitioner is an "alien," whether he is "removable," and whether he is removable for a reason covered by § 242(a)(2)(C). See Max-George, 205 F.3d 194, 199; Richardson, 180 F.3d 1311, 1316. Review of these questions amounts to review of the merits of the government's case against the alien.
Moreover, because a court has jurisdiction to resolve questions governing whether § 242(a)(2)(C) applies, the alien retains a forum in which to argue that § 242(a)(2)(C) is unconstitutional as applied to him. See Max-George, 205 F.3d at 199-200. Therefore, assuming that in some cases the Constitution may require more review than § 242(a)(2)(C) permits, cf. Shah, 184 F.3d 719, 723-24 (indicating in dictum that the Suspension Clause may require judicial review of an alien's statutory eligibility for discretionary relief), neither § 242(b)(9) nor § 242(a)(2)(C) prevent the alien from arguing as much to the court of appeals. See Richardson, 180 F.3d at 1316. If § 242(a)(2)(C) is unconstitutional as applied to an alien under the Suspension Clause or other constitutional provision, the alien could presumably obtain whatever further review the constitution required from the court of appeals. See Richardson, 180 F.3d at 1315-16. An alien in Anic's position thus has sufficient avenues to test the legality of his detention despite the elimination of habeas jurisdiction in § 242(b)(9).
In summary, INA 242(b)(9) divests this Court of jurisdiction to review the merits of Anic's petition. Moreover, the elimination of habeas does not violate the Suspension Clause. Therefore, the petition must be dismissed, and the order restraining respondents from removing Anic from the Court's jurisdiction must be vacated.
Accordingly,
IT IS HEREBY ORDERED that respondents' motion to dismiss [# 11-1, # 11-2] is granted.
IT IS FURTHER ORDERED that Jakov Anic's petition and amended petition for a writ of habeas corpus under 28 U.S.C. § 2241 [# 1, # 17-1, # 17-2] are dismissed for lack of jurisdiction.
IT IS FURTHER ORDERED that the preliminary injunction previously entered in this matter is VACATED.
NOTES
[1] The only reference to habeas corpus in § 242 is found in § 242(e)(2), which authorizes limited habeas review of orders denying admission to arriving aliens under § 1225(b)(1).
[2] Notwithstanding the government's assertion that "[t]he scope of whatever judicial review remains in cases such as Anic's is a question for the Court of Appeals to resolve," I find it necessary to consider the avenues of review left open by § 242(a)(2)(C) in addressing the constitutionality of § 242(b)(9).